## Case No. 18,182.

### The YOUNG MECHANIC.

#### [3 Ware, 58.] [1]

District Court, D. Maine. Feb., 1856.

ADMIRALTY—COSTS — JOINDER OF PARTIES — PROCEEDINGS IN REM—INTERVENING PETITIONS —STIPULATION FOR RELEASE.

1. The act of congress of March 3, 1847 [9 Stat. 181], regulating costs in admiralty proceedings in rem, where less than a hundred dollars is recovered, is repealed by the act of Feb. 26, 1853 [10 Stat. 161]. The process act of July 22, 1813 [3 Stat. 19].

2. In suits in rem all persons having claims of a like nature against the thing, may join in a single libel for the purpose of having that question decided, whether the claims arise from tort or contract.

3. When a vessel is arrested by a lien creditor, all other such creditors may intervene by summary petition without having the vessel arrested again, and have their claims allowed.

[Cited in brief in The Pathfinder, Case No. 10,-797.]

4. Quære. When the vessel is delivered on a stipulation for her full value, whether such creditors may have the same remedy on the stipulation that they have against the vessel remaining in the custody of the court.

In this case, several libels were filed against the vessel while on the stocks, and before she was launched, by material men claiming a lien under the law of the state. The claimant, for whom she was built, had advanced large sums of money to the builder from time to time while the work was in progress, for which he had taken a mortgage of the unfinished vessel, and finally, before she was completed, had taken a bill of sale. A few days after the bill of sale was exe-

1 [Reported by George F. Emery, Esq.]

cuted, the builder died insolvent, and the material men commenced suits to enforce their liens. It was contended on the part of the claimant, that the liens were all defeated by the death and insolvency of the builder, to whom the materials were furnished. The district court decided against the claimant and in favor of the liens. [Case No. 18,181.] In order to settle the question one of the cases was carried by appeal to the circuit court, where the decree of the district court was affirmed. [Case No. 18,180.] All the libels were then referred to a commissioner to ascertain the amount of each claim, and his report was confirmed by the court, and on motion of the claimants, the parties were heard in the taxation of costs.

Evans & Hovey, for libellants.
Shepley & Dana, for claimant.

WARE, District Judge. Two of the libellants in these cases recovered less than $100 damage, and it is contended that under the act of March 3, 1847 (9 Stat. 121), they are entitled to no more costs in the whole, than one-half of the amount of the debts or damage recovered; that being the rule established when the suit is in rem. And if that act is to be considered as now in force, it must furnish the measure of costs in these cases. But my opinion is, that this part of the act is repealed by the act of Feb. 26, 1853 (10 Stat. 161). This act orders that "in lieu of the compensation now allowed by law to attorneys, solicitors and proctors, &c., the following and no other compensation shall be allowed," and then goes on to establish a general tariff of taxable costs. The fifth section repeals all previous laws, which are incompatible with the provisions of this act. And the act provides that on a final hearing in equity or admiralty, there shall be allowed to the solicitors or proctors a docket fee of twenty dollars, with a provision that if the libellant in admiralty recovers less than fifty dollars, the docket fee shall be ten dollars. The act does not distinguish between suits in rem and suits in personam, and being general must apply to both. The act of 1847 is clearly incompatible with this provision in the latter act, limiting as it does the costs in particular cases, and providing for a particular distribution of them inconsistent with the provisions of the last act.

Another objection to the allowance of full costs is of a more general character, and applies to all the libels. It is founded on the process act of July 12, 1813 (3 Stat. 19). The second section of this act provides, where several libels are brought against a vessel or cargo, which might be legally joined in one, that there shall be allowed no more costs than are taxable on a single libel, unless special cause for several is shown to the satisfaction of the court. This act, at least this part of it, does not appear incompatible with the act of 1853, and is therefore not repealed by it. The ar-

gument is, that material men, claiming a lien under the statute, may all, like seamen suing for their wages, unite in a single libel, and costs should be allowed only on one libel. This depends on the true construction of the act, and to arrive at that, the whole must be considered. Its professed object is to diminish the cost of judicial proceedings by preventing a needless multiplicity of suits.

The first section provides, that when several actions or processes are brought against persons who might legally be joined in one, the plaintiff or libellant shall recover costs only on one action, unless special cause is shown for more than one. This section contemplates several actions by a single plaintiff against several defendants who might be joined.

The second section is supposed to be applicable to these cases. The provision of this is that when several libels are brought against one vessel or cargo, which might be joined, costs on one libel only shall be allowed except on special and satisfactory cause shown. This section apparently contemplates the case of a single and not of several libellants, and this appears to be evident from the clause that immediately follows, which provides that on libels against a cargo or parts of a cargo, which are seized as forfeited for the same cause, costs shall be allowed only on one libel, whatever may be the number of owners or consignees. There is nothing in the language of this section which leads to the conclusion, that where several persons have a like cause of action founded on a several liability to each, and not on a joint liability to all, they must join under the penalty of a forfeiture of costs.

It is the third section of the act which applies to cases like the present. That provides that when causes of a like nature, or in relation to the same question, shall be pending before the court, it may make such orders or rules as to the course of proceeding as are conformable to usage, for the unavoidable delay and cost, and for that purpose order causes to be consolidated; and authority is given, where any attorney or proctor has multiplied processes unnecessarily and vexatiously, to require him to pay the costs himself.

The questions which arise under this section are, first, whether these libels could legally have been joined, and on this question my opinion is, that they might; and secondly, whether they have been so unnecessarily and vexatiously multiplied as to call for the application of the penalties which the act provides, and on this question my opinion is, that they have not.

A doubt was suggested, on the part of the libellant, whether these parties could unite in one libel, and an obiter dictum in the opinion of the court in the case of Oliver v. Alexander, 6 Pet. [31 U. S.] 146, is relied upon as sustaining the doubt. It is there stated arguendo, that this privilege, by which several persons, each having a separate and independent cause of action, are permitted to join in a single libel, is allowed as a special favor to seamen in suits for their wages and to them only. But the decision in the case of Rich v. Lambert, 12 How. [53 U. S.] 352, where this question was directly before the court, establishes the contrary doctrine. That was a libel against the vessel to answer for damage to goods, occasioned, as was alleged, by the improper stowage of the cargo through the negligence or fault of the master. The damaged goods belonged to fifteen different owners. Five of them united in one libel, and the other ten brought separate libels. In the progress of the causes, the court ordered them to be consolidated for the purpose of trying the general question involved in all, that is, the liability of the vessel. It was held, that in such a case, "it is fit and proper that the proceedings should be joint, either by allowing the parties to unite in the libel, or by an order for consolidation, if separate libels have been instituted." What was before allowed by the practice of the court, is now, by the process act of 1813, required under the penalties provided by the third section of the act. It may be stated as a general rule in the admiralty, that when several persons have claims in rem against a single thing, whether arising from tort or contract, of a like nature and all involving one question, all may join in a single libel for the purpose of having that question tried, although, when that is settled, there may be special defenses applicable to each case. When the general question is decided, the case of each libellant becomes separate and independent, and is litigated on its own merits. But though they may, they are not obliged to unite, and if separate libels are brought this will have no influence in a hearing on the merits of the case, but unless satisfactory cause is shown for separate libels, it will affect the question of costs.

The question then presents itself, was there in this case satisfactory cause for separate libels. Without relying on the doubts, which might have been entertained from the novelty of the question, of the right of the different libellants to unite in one libel, or inquiring whether such doubts might constitute a legitimate reason, another cause is shown which must be held satisfactory. When the first libel was filed the ship was restored to the claimant on a stipulation, not for her full value, but for double the amount claimed in the libel. The second libellant was, therefore, under the necessity of arresting her to secure his own claim, and each succeeding libel was brought under the same necessity. It cannot, therefore, be pretended, that separate libels have been unnecessarily and vexatiously multiplied by the fault of the proctors. If the ship had not been restored on stipulation, but had remained in the custody of the law, the other lien creditors might have presented their claims on summary petition and had them allowed without a new

process against the thing; for that being in possession of the court a new arrest is unnecessary. In proceedings in rem, when the res is in the custody of the law, it is retained by the court in usum jus habentium, for lien or privileged creditors, who have jus in re, as well as for those who have a general or unqualified jus proprietatis subject to these liens. In regard to these privileged creditors, the thing itself is considered a debtor, and they may present their claims and have them allowed and paid from the proceeds of a sale. This is the familiar practice of the admiralty after a decree and satisfaction of the first libel, when there are remnants and surpluses remaining in the court. And I can see no reason, in principle or convenience, against allowing the same claims against the res before a decree, and such has been the practice in this district. Hull of a New Ship [Case No. 6,859]. The rights of the creditor are the same against the whole as against the remnants. If the claims stand in different ranks of privilege they are marshaled and paid according to their priorities. If they hold the same rank they are paid concurrently, without regard to the time when the debt was incurred, or the time when the suits were commenced. "Privilegia non ex tempore æstimantur sed ex causa; et si ejusdem tituli fuerunt concurrunt, licet diversitatis temporis in his fuerint." Dig. 42, 5, 32. It is true that a distinction is made by the English court of admiralty, which will allow payments to be made from the remnants on claims, over which the court will not take jurisdiction in an original suit against the thing. But the distinction rests on no intelligible principle. It has been adopted only in obedience to the common law courts and under the duress of prohibition. It should not be followed in this country. Whether, if the owner has the ship restored to him on a stipulation for her full value, the creditors may have the same remedy on the stipulation, that they have against the ship when that is retained in the custody of the law, is a question that has not, to my knowledge, been decided. No satisfactory reason occurs to me why they may not. The stipulation is a substitute for the thing. The owner is allowed to have the possession and use restored on his leaving an equivalent, and, having provided that, there is no reason why his possession should again be disturbed by lien claims existing at the time of the stipulation. If the whole amount of the stipulation is exhausted and paid, it amounts substantially to a re-purchase of the vessel discharged of the liens. If any technical difficulty arises from the form of the instrument, this is an objection not favored in the admiralty, especially in the construction of instruments like this taken by order of the court in the interest of justice. Lane v. Townsend [Case No. 8,054]. At any rate it may easily be obviated by a slight alteration in the terms of the instrument.